

Plaintiff appears pro se

**FILED**

2023 JUL 28, P 3: 04

CLERK OF COURTS
CUYAHOGA COUNTY

CV23983132          153913537

COURT OF COMMON PLEAS IN THE STATE OF OHIO
FOR THE COUNTY OF CUYAHOGA

Vladimir Alexander L. Swerchowsky, Plaintiff,

vs.

Defendants,

CT CORPORATION SYSTEM/
3800 N CENTRAL AVE SUITE 460,
PHEONIX, AZ 85012 USA
U-HAUL INTERNATIONAL INC./
2727 N CENTRAL AVE
PHEONIX, AZ 85004
DOES I through II, inclusive,
AMERCO/Edward Joseph Schoen/
Serena Barth

AMERCO  41215 N Ridge Rd
         Elyria, OH 44035

SERENA  41215 N Ridge Rd
BARTH   Elyria, OH 44035

EDWARD  2727 N CENTRAL AVE
JOSEPH  PHEONIX, AZ 85004
SCHOEN

CASE NO. _____

| | Complaint |
| DEBORAH M TURNER | |
| CV 23 983132 | |

COMPLAINT FOR DAMAGES:

1. Breach of Contract
2. Breach of Fiduciary Relationship
3. Slander
4. Libel
5. Retaliation
6. Denial of access to premises
7. Mismanagement
8. Exclusion from participation
9. Illegal termination
10. Oppression
11. Assault
12. Harassment
13. Accosting

COMES NOW, the plaintiff, Vladimir Alexander L. Swerchowsky, and for cause of action alleges as follows:

FIRST CAUSE OF ACTION

I

Plaintiff is now and at all times herein mentioned is and was an owner of stock in AMERCO/UHAUL INTERNATIONAL INC and paid as an employee when for the purpose of dividend distribution, plaintiff was previously employed at location 495 Oberlin Rd Elyria Ohio 44035, operated by U-HAUL INTERNATIONAL INC, also referred to as AMERCO, worked as shareholder employee under general management of Serena Barth, John Doe I and John Doe II, addresses unknown.

II

Plaintiff is informed and believes, and based on such information and belief, alleges that defendants DOES I through II were, at all times herein mentioned, and now are, residents of the County of Lorain, State of Ohio.

III

That the true names or capacities, whether individual corporate, associate or otherwise of defendants DOES I through II, inclusive, are unknown to plaintiff who therefore sues said defendants by

**EXHIBIT A**

such fictitious names and will ask leave of court to amend its complaint to show their true names and capacities when the same have been ascertained.

IV

At all times herein mentioned, defendants, and each of them, were the agents and employees of the remaining defendants and each of them, and in doing the things herein alleged, were acting in the scope of such agency and employment.

V

That on or about November 20, 2022, in the County of Lorain, State of Ohio, plaintiff Vladimir Swerchowsky and defendant Serena Barth entered into a written employment agreement, by the terms of which plaintiff agreed to be employed by defendant at defendant's Lorain county location, and that in consideration of defendant's written agreement to perform the conditions, convenants and promises as set forth therein, defendant agreed to compensate plaintiff for said services pursuant to and in the manner outlined in said written employment agreement, undated, a copy of which was saved and attached hereto, marked Exhibit "A", and made a part hereof as though fully set forth in *haec verba*.

VI

That plaintiff has performed all conditions, convenants and promises under the written employment agreement, undated, on its part to be performed. A low wage unagreed to upon hiring was given to plaintiff, when previous verbal consent was made as to the wage of plaintiff according to plaintiff's guidelines and preferences well above the unagreed upon. Under duress shareholder plaintiff worked as employee, treated purposefully with coercion and systematic disregard. Weapons were frequently within visibility and plaintiff was treated as a target for systematic harassment by defendants. Employment papers were signed or unsigned per constraint under said duress. Addresses of defendants are therefore unknown due to violence per presence and use of each weapon used for coercion.

VII

That on or about January 6th 2023, in breach of the terms of the above referred to written employment agreement, unethical and desperate actions were taken by defendants in attempt to nullify employment agreement, in addition to doing so reducing and nullifying the written at-will employment agreement in violation of the terms of said agreement, as well as in furtherance targeting and attacking plaintiff's position as a minority stake owner.

VIII

**EXHIBIT A**

That as a direct and proximate result of the breach of said contract on the part of the defendants, and each of them, as hereinabove alleged, plaintiff has suffered irreparable injury from this business, all damages combined in the approximate sum of $60,000,000,000.

FOR A SECOND, SEPARATE AND DISTINCT CAUSE OF ACTION, PLAINTIFF COMPLAINS OF DEFENDANTS, AND EACH OF THEM, AS FOLLOWS:

I

Plaintiff re-alleges all of the allegations contained in paragraphs I through VIII, inclusive, of its First Cause of Action, and by this reference incorporates the same herein as though fully set forth. Plaintiff's employment within the company and exposure to defendants and their illicit acts has caused financial damages from slander, libel, psychological damage, damage to reputation and physical harm, the full extent of which is unprecedented.

II

Noting that Ohio places a heightened fiduciary duty between majority and minority shareholders as in Buckingham vs Bonasera and several other Ohio case texts, it is applicable in a close corporation as well as between public shareholders, if tactics utilized to prevent a minority shareholder from having an equal opportunity, termination without just cause is illegal, not at-will employment, but employment within reasonable expectations of a shareholder's employment and these are to be expected by a shareholder-employee in Ohio. Efforts were taken to harass the plaintiff, and plaintiff was given written and public verbal warnings for allegedly doing his job "backwards" producing libel in this case because these falsified official documents are being utilized by the company, and slandering plaintiff repeatedly in public. Each employee mentioned with exceptions made to the president of the company Joseph Schoen and John Doe II who worked as the hitch pro made a distinct effort to slander and accost plaintiff, publicly accusing plaintiff of being distinct negative stereotypes far outside of any joking manner, and furthermore made concentrated effort to sabotage the plaintiff's position, harassing plaintiff publicly causing irreparable injury.

III

That defendants, and each of them, breached the obligation of fiduciary relationship by fraudulently claiming at-will employment, insisting shareholder plaintiff waive his rights, falsely publishing disciplinary warnings as well as using the facility for gambling and working on each other's cars as well as other inappropriate purposes, like smoking and vaping indoors frequently without warning, dumping car parts and as some kind of dating service. John Doe II would often show up with car parts and other objects which would then be dumped at the facility and would also dump the mop bucket in the parking lot violating policy and the law, publicly demonstrating this kind of carelessness.

IV

**EXHIBIT A**

Such a diverse number of breaches are void of legitimate business purposes, in this case the termination without proper cause or actionable proof, a legitimate business reason would have been required to legally terminate plaintiff. Plaintiff was given no proper notification of any legitimate reason at any point for termination, having complained to corporate of defendants' refusal to properly train plaintiff and other violations, plaintiff alleges prejudice and malice in hiring and termination. Defendants had Russian objects all over the front desk, harassed plaintiff publicly, accosted plaintiff in the parking lot, used full name to belittle plaintiff, repeatedly sabotaged plaintiff and made it impossible to breathe the air in the building by burning cigarettes incessantly, making plaintiff sick and spreading COVID 19 to plaintiff's family on purpose, causing eye irritation, allergic skin reactions, as well as endangering plaintiff with full intent. Manager contributed in this effort to undermine and attack the plaintiff, who is not a smoker, and contributed to accosting and sabotaging plaintiff, causing irreparable damage to plaintiff's reputation and career in public at the hands of U-Haul International INC and AMERCO and exposing plaintiff and the public to harsh carcinogens and viruses impacting health. Noting that a stake owner employee acting in his or her own good faith has grounds to sue for retaliation, oppression, and other events, even when the stake is an identical amount, as in McLaughlin vs Beeghly 84 Ohio app 3d 502 (1992) wherein denied access to premises is also illegal, plaintiff concludes that the premises at U-Haul moving and storage of Elyria were made purposefully unsafe, a toxic workplace environment and uninhabitable. The building is also now stained with nicotine on the inside from the many hours these people spent trying to scare off plaintiff by harassing plaintiff, gambling and smoking cigarettes incessantly. These types of violations are numbered and many.

V

As in Wrightsel vs Ross C[o]. Redi Mix Inc March 26, 1993 Ross App No. 1791 Unreported, Ohio law covers use of inconsistent reasoning in termination of employment, breach of fiduciary duty in Ohio. The relationship between a shareholder and a corporation is to include the "Duty of utmost faith and loyalty in business dealings" or *uberimmae fidei*, plaintiff was given the opposite treatment, even paid well below agreement in hiring. Plaintiff was never given opportunity to return uniform after termination and as it would seem billed for it consequently instead.

VI

Plaintiff claims exclusion from participation and damages, hostile work environment, breach of fiduciary duties, mismanagement, these people worked on each other's cars at work and let the building fall into clutter, dangerous filth and disrepair, using the facility as an illegal dump for personal junk.

VII

Ohio places a heightened fiduciary duty between majority and minority shareholders. Another good applicable case would be Buckingham vs Bonasera. If tactics utilized to prevent a minority

**EXHIBIT A**

shareholder from having an equal opportunity within a corporation are executed this employment is not at will but within reasonable expectations of the shareholder plaintiff. Plaintiff was sent termination letter long after the date of firing. Manager also requested that plaintiff use his own device for police contact outside of work, violating company policy, conflicting with employee shareholder duty of utmost faith and loyalty, plaintiff refused and sent the company president a letter and tried to reach out via telephone.

VIII

Numerous instances of sabotage occurred regarding the uniform as well as training and access. Plaintiff was required to wear the large thick UHAUL winter hat even when it was not even remotely cold, (this plaintiff acknowledges is racist because it involves hair) and was given no other uniform. Plaintiff was not given a SMID number, was instead harassed over it and was told to clock out and go down the road to use unsafe Wi-Fi to try and get a SMID from corporate, as though this was some kind of slap on the wrist, when in reality this was done to make plaintiff's job impossible, reducing plaintiff's pay, forcing plaintiff to do something outside of work to access paycheck and paystubs violating policy. Plaintiff was not paid for this work and knew that it was inappropriate of the manager to even ask plaintiff to use his own devices and car for this or other requirements as obligations. Plaintiff's login passwords were changed often, making it difficult to enter the modules or to clock in, for this he was clearly not paid.

FOR A THIRD, SEPARATE AND DISTINCT CAUSE OF ACTION, PLAINTIFF COMPLAINS OF DEFENDANTS AND EACH OF THEM AS FOLLOWS.

Plaintiff re-alleges all of the allegations contained in paragraphs I through VIII of its First Cause of Action, and paragraphs I through VIII of its Second Cause of Action, and by this reference incorporates the same herein as though fully set forth.

I

As in McLaughlin vs Beeghly 84 ohio app 3d 502, even when the stake is an identical amount, regardless of how small the stake, if held for duration or bought it becomes ownership. The Plaintiff owns the original stock that was issued, having had this reduced by the corporation, and was gifted a split of many useless shares of UHAL.B nonvoting stock and fractions of the original stock after a time working. Meanwhile plaintiff was targeted and treated as though business dealings were not beneficial purposefully. Plaintiff was accosted, sabotaged and harassed by Serena Barth and someone only identified as Patrick (John Doe 1), who always seemed to light up a cigarette where there is danger of an explosion if plaintiff was present. Patrick also claims to live with the mechanic at the business Noah (John Doe 2), both are apparently involved more closely with Serena Barth than employee relations would amount to in this case, both of whom smoked and vaped near gasoline frequently on camera in the indoor part of the receiving area near plaintiff endangering plaintiff.

II

**EXHIBIT A**

These two applicable cases: Wrightsel vs Ross co Redi Mix Inc March 26 1993 ross app no 1791 (1993) Unreported, and Morisson vs Gugle (2001) 142 ohio app. 3rd 244 designate a shareholder's employment not be terminated unless there is a legitimate business reason. Plaintiff had complained in letter email to the corporation president and was swiftly retaliated against. Retaliation was evident from the manager and others in the time frame that it would have occurred, and plaintiff deems this a freeze out in violation of Ohio law, plaintiff having been harmed in a separate and distinct way from the corporation warranting action be taken.

III

Plaintiff had to wait very long to get his after-termination paycheck. It would have been reasonable to pay it out but these people always seem to do the opposite, paying someone they don't favor the lowest possible wage and forcing them to do things they can't even do, for instance the manager tried to force plaintiff to wear a thick orange U-Haul hat when it wasn't even remotely cold enough to be wearing a hat, even in the upper 60 degrees fahrenheit. The manager expected the plaintiff to dispose of dangerous condensed mechanical parts by hand, hazardous materials by hand, heavy objects by lifting a dangerous brown container with no handles into the dumpster. This was frequently heavy enough to be a four-person job, dangerous with biological hazards, plaintiff became injured from lifting the condensed metal parts by the singular brown bin that a forklift should have been used for, a specific weight limit is expected for the job and this beyond exceeded the listed job requirement, this was sabotage. Plaintiff evidently was not given any sort of proper training whatsoever to do the impossible, plaintiff complained to corporate about not being trained effectively in the time frame where it should have been at least managed to begin with.

IV

Legal timekeeping was thrown out the window, requests made for contacts outside of work, violating company policy and the fair labor standards act. Plaintiff also includes that unpredictive scheduling was used, and that financial damages from lost wages to be included.

V

We the people have a patient protection and affordable care act and these people chose smoking cigarettes indoors to "deal with" plaintiff, this is mismanagement, just to be clear this is also an assault, causes DNA damage, and doesn't protect a plaintiff's paycheck if they show up early or late at this U-Haul Moving and Storage of Elyria. Coming in early or late must result in payment. Whenever the plaintiff was paid this was not covered. Everything these people do violates employment law, the building is more of a public gambling center, plaintiff acknowledges that this violates the policy on the bulletin board in the office and the company website. John Doe 1 and John Doe 2 worked on the manager's and others' car engines, the parts replaced were disposed of on site with hazardous materials worthy of a HAZMAT suit, this correlating with payment from plaintiff ownership tax and stock dollars, for this company is evidently corrupted to the point where liquidation would be nigh. This was a

**EXHIBIT A**

friendship between these individuals, this was illegitimate in hiring and process, nepotism, racism and hush payment. Plaintiff never agreed to a 401K plan either.

VI

Rounding up or down cannot result in failure to pay. Plaintiff was paid under the table, given a "tax break" but given specific hours, part time, full time, with no knowledge as to when the schedule would change, as well as random hours, not even by the minute, this was illegal. Personal harassment, for plaintiff's work cleaning cars, defendants yelled plaintiff's name repeatedly, making it known by plaintiff's first name and then asking how to pronounce plaintiff's last name in almost every single instance. Manager Serena Barth would insist that plaintiff "likes to clean" maliciously (this is false, and slander) and negligently hired people who, well, don't, and kept them employed at U-Haul.

VII

General manager and John Doe 1 insisted publicly that plaintiff on his own time and at work has a strange compelling need to "look up weird shit" publicly, repeatedly, trying to discourage plaintiff from doing any training and further employment, or any sort of online information seeking about anything, repeat sabotage amounting to severe harassment and accosting. Plaintiff was fired on January 6th. J6ers as they refer to them now have been very proactive about attacking "woke" whatever they seem to think that means, stereotyped individuals and the like, it would appear that this is evidently the same anti-woke ideology of the general manager Serena Barth and evidently UHAUL/AMERCO.

VIII

Defendants hire exclusively certain races and encourage them to belittle others, otherwise they would not so uniformly have caused injury to plaintiff under Serena Barth, John Doe I and John Doe II. Plaintiff's rights as a nonsmoker the right to have clean air, to be exempt from genetic discrimination and public harm, discrimination for bodily damage, belittling in front of customers, publicized "discipline". Plaintiff within employment remains exempt from having as a requirement to be faced with daily psychological injury, genetic injury, assault, negligence, breach of fiduciary duties, retaliation and oppression within a toxic workplace environment as a US citizen.

VIIII

Plaintiff was harassed over not having an "SMID" number, accosted in front of customers, aggressively accused of looking up "weird shit", belittled, loudly accused of doing things "backwards" which is a specific negative social stereotype, not a business critique. Plaintiff was sabotaged and harassed. Plaintiff kept dates of all of these occurances. It says in the actual training for the job that eight million people die per year from cigarettes yet these people think it is okay to try and force plaintiff to ingest said tobacco products, advertising them on a big screen at the counter and seeming to insist publicly that plaintiff was born to burst into flames because of gasoline vapors. Defendants' advertising of tobacco products is very suspicious.

X

Plaintiff had good reason to believe that gasoline vapors were dangerous and that willful negligence would result in assault by weaponized gasoline mixtures.

**EXHIBIT A**

XI

The surveillance view of the bay shows defendants and others using near gasoline to the public, one of which container was frequently open, full at several times to the brim. To demonstrate this is also hate, injury, and negligence as well as advertising tobacco products on a big screen.

XII

Racial balancing and quotas were used in hiring and promotion, which is racist. Violating fiduciary duties, code violations were prevalent.  Nepotism in hiring and termination, balancing race over the law that says this is not black or white was deployed. Even if the defendants hire their Asian friend who uses the same tobacco products it does not change anything because they were not permitted to do the things that they were doing. Plaintiff was working grueling shifts wherein he was expected to walk through clouds of indoor cigarette smoke, harassed, sabotaged and ultimately terminated and has remained a U-Haul shareholder.

WHEREFORE: plaintiff prays for judgement as follows:

FIRST CAUSE OF ACTION:

1.  20,000,000,000

SECOND CAUSE OF ACTION:

2.  20,000,000,000

THIRD CAUSE OF ACTION:

3.  20,000,000,000

AS TO ALL ACTIONS:

5. For all costs of suit herein incurred

6. For such other and further relief as the Court deems just and proper.

By Vladimir Alexander L. Swerchowsky

Pro Se Plaintiff

07/28/2023

**EXHIBIT A**

Letter email from Vladimir Alexander L. Swerchowsky to Edward Joe Schoen, President and Chairman of AMERCO
(December 30, 2022)

To:

joe@uhaul.com

Fri 30-Dec-22 6:31 PM

Hello Joe,

I am a shareholder working at the Elyria Ohio facility and it needs to be looked at for major ethics violations, hiring violations, code violations, literally toxic workplace environment, belittling **sanctioned by** the general manager initial SB who has apparently been having "relations" with an employee.. This guy also claims to live together with another male employee in some shape or form of that, (he referenced "the house" in his case as well).. SB and the others talk loudly of these things it's pretty easy because it seems apparent they are deaf from tools. I can't help but notice all of the code violations that include leaving doors propped, smoking near gasoline and in receiving bay near gasoline cans and other potential flammables, vaping at the counter (yes there was one of those and I've been noticing there are a lot of people working at this particular one who do that in particular) they "hawk" loud and spit way more than the average human beings, these people, it is deplorable I feel bad for the people eating at the kind of ugly diner next door (they don't pick up their litter, I did!).

These aforementioned "employees" leave items where they are not supposed to, for instance, the ones who vape at the counter kept their's sitting out all day, and there's frequently stuff that people could trip over, it's a MESS, I am horrified, and none of the trucks were even remotely clean until I began scrubbing them as an employee, sticky soda residue on everything, parking lot is still a mess. I can safely say I don't want to help them pass their truck audit anymore under SB! In furtherance I have been a constant target for belittling, endangered by the contents of vehicles (glass in the seats etc) as some quasi training has been done! How easy to reverse the blame on me for people like this. I was belittled by the happy couple for allegedly doing check ins backwards, which is impossible, even whilst answering questions. This is not something they should be focused on at this point amidst these clear violations, I have pictures..

I also look kind of navajo, I'm actually kind of I wear a huge mask, I have weird eyelashes that stick out of the spot where eyes tear up so I am kind of looking at it that way as well, as though genetics etc play some factor in whether they think I "survive" or not. This bias it seems to me is clear at this point that SB seems to think she can just hire more black people to ignore etc and their "problem" which is apparently me in this case will just go away with my ridiculously low paychecks and expecting me to train newcomers when I'm in fact being put in a position where I'm forced to wonder why these people are trying to make me question... Reality.

Some of them work off the clock, this I am equating to hush payment because there are some of their biker ties involved as well.

I also received a call from a police officer who wanted my description of someone while I was clocked out, typically in situations like this I either would have to be clocked in or refuse altogether because of being disproportionately affected by law enforcement drama, so my number was given to one, and I am apparently expected to do things outside of work for zero dollars like other employees whose off the clock work easily amounts to hush payment! The GM accepting all of this conduct and rubbish is condemnable.

It would appear that I am being retaliated against at the moment, given "verbals" when in fact I am being sabotaged (that IS harassment) by the general manager who expects me to know where everything is if it isn't on the check in cart, complaining saying I work too slow, this is becoming racist, and here some of these people are

**EXHIBIT A**

gaslighting me etc, and they start instructing me that I will be dealing with propane. I told them I never really wanted to dispense propane at all. I was hired as a customer service rep, but ended up just detailing so that they can pass some truck audit. I was hired for a different job. I even did some light plumbing yesterday I used to do that, but anyways action is needed, including a new general manager for this location, and you can take her toothless lover and send him off too I guess because he's probably traumatized as well, haha.

Seriously,

VLAD SWERCHOWSKY

PS I know my rights as a shareholder and they failed my inspection.. So bad...

End letter.

WORKS CITED:

https://www.courtlistener.com/opinion/3990094/mclaughlin-v-beeghly/

https://casetext.com/case/mclaughlin-v-beeghly

https://casetext.com/case/mason-law-firm-v-ross-co-redi-mix

https://caselaw.findlaw.com/court/oh-court-of-appeals/1124417.html

**EXHIBIT A**

Exhibit A 

## *Ethical Conduct Agreement*

*U-Haul is committed to supporting and promoting the highest ethical standards. Each U-Haul Team member is expected to:*

- *Conduct U-Haul business with integrity and in compliance with all applicable laws, rules and regulations.*
- *Avoid situations where personal interests are in conflict with U-Haul's interests.*
- *Treat customers, suppliers and fellow Team members in an honest, respectful and fair manner.*
- *Safeguard U-Haul proprietary information, assets and resources.*
- *Maintain confidentiality of customer and nonpublic U-Haul information, and your own personal U-Haul password.*
- *Read, understand and follow U-Haul cash management policies and procedures.*
- *Report theft, fraud and unethical behavior to your manager, company president, Area District VP or the U-Haul Internal Audit team.*

*I am committed to ethical and legal conduct. I understand that failure to meet the expectations described above may result in disciplinary action or prosecution for involvement in illegal activity.*

**EXHIBIT A**



**If injured on the job**

Immediately notify your supervisor of the work related injury.
You and your supervisor or manager will discuss and determine the best course of medical treatment/action needed.

- First Aid Only - Medical treatment can be provided at the location using the facility's First Aid kit.
- Walk-In Clinic (Urgent Care) - In most cases, the walk-in clinic will be able to provide you with required and essential treatment for the injury.
- Hospital Emergency Room - Use this option when the team member has been rendered unconscious (or has suffered another type of serious injury), the injury warrants being taken for medical care by ambulance, or the Walk-in Clinic is closed.

The incident that resulted in your being injured will be reported to U-Haul's Risk Management department.

An Injury Counselor will be assigned to assist you with the Workers' Compensation benefit process. Injury Counselors are Team members of U-Haul Risk Management. The Injury Counselor will contact you to learn details concerning your injury, and to answer any questions you may have concerning Workers' Compensation, including the following areas:

- Medical Treatment
- Pharmacy Services
- Communication with your Claims Adjuster at Gallagher Bassett (U-Haul's Workers' Compensation Third Party Administrator)
- Benefit Concerns (if applicable)

The Injury Counselor will maintain contact with you as you progress in your recovery, and can be your advocate in coordinating a variety of Workers' Compensation related activities, including communication with Gallagher Bassett, utilization of appropriate medical providers, return to work, etc.

Your incident and resulting injury will be reported to Gallagher Bassett. A Claims Adjuster from Gallagher Bassett may call and introduce him or herself to you. Gallagher Bassett is responsible for monitoring your medical progress, ensuring that appropriate medical expenses are paid accordingly, and the distribution of all Workers' Compensation benefits that you may be entitled to.

After receiving treatment:

- Discuss your work status with your supervisor and Injury Counselor regarding your medical status and when you will return to work.
- Your supervisor will listen to your concerns. If your medical condition prohibits you from performing your regular job duties, your supervisor will attempt to provide you with work in a fashion that helps you transition back to your usual job responsibilities.
- If you are not released to work at all, maintain contact with your supervisor after each medical appointment and update both your supervisor and your Injury Counselor about your release to any type of work status. (If you are not released to perform any work duty whatsoever, maintain contact with your supervisor and Injury Counselor. After each medical appointment, provide them with updates concerning your treatment plan and work status, including any type of work release and expected Return To Work date.

Workers' Compensation Injury Counselor Contacts:

Theresa Boening: Theresa_Boening@uhaul.com 800-528-0463 x 660119. Fax 602-606-5405
Northern CA, CT, FL, NC, ND, NV, OH, SC, WA, WV, WI

Jennifer Staley: Jennifer_Staley@uhaul.com 800-528-0463 x 660117  Fax 602-606-5405
AL, AZ, DE, GA, MA, ME, MN, NH, NJ, NY, PA, RI, SD, VT

Jody Brandenburg: Jody_Brandenburg@uhaul.com 800-528-0463 x 660110. Fax 602-606-5405
Southern CA, CO, DC, IA, IL, MD, MN, MO, NE, NM, OR, VA, WY

Jodi Hom: Jodi_Hom@uhaul.com 800-528-0463 x 660116, Fax 602-606-5405
AK, AR, HI, ID, IN, KS, KY, LA, MI, MS, MT, OK, TN, TX, UT

Program Manager: Thomas Loden: Thomas_Loden@uhaul.com 800-528-0463 x 66012

**EXHIBIT A**

## Uniform Appearance Agreement

I understand that I am to appear in uniform during all working hours. It is my responsibility to furnish black pants, a dark belt and dark shoes. U-Haul will provide me with a uniform shirt(s) and jacket. I am responsible for cleaning, pressing and maintaining those items furnished by both U-Haul and myself. Shirts and jackets are the property of U-Haul, and must be returned if I leave the company. I further understand upon the return of these items I am entitled to a receipt stating these items have been returned. If I do not return the shirt(s) or jacket(s), I authorize my employer to deduct the price of said garment(s) from my final paycheck.

It is also my responsibility to, at all times, keep my appearance at a level that is acceptable to our U-Haul customers. I understand that U-Haul Company, on the basis of its public image and customer reaction determines these standards.

I further agree to return all equipment, keys, tools, safety glasses, back-support belts, hats, I.D. cards, and manuals, etc. that are the property of

U-Haul Company if I leave the company. If I do not return ALL items that are the property of Ut Haul Company, I authorize my employer to deduct the replacement price of said item(s) from my final                                                                                                                    paycheck.

**EXHIBIT A**

# Productivity Statement

As a U-HAUL® Team member, I understand that the Company is made up of productive people performing the kind of work they enjoy.

I also understand that team members are productive people in an economic sense, as defined below. • Productive people are honest.

• Productive people work hard.

• Productive people are enthusiastic.

• Productive people are efficient.

• Productive people are professional workers.

• Productive people understand what it means to get and serve customers profitably.

• Productive people know the customer is the boss.

• Productive people know the customer is our only source of money.

I am aware that: • Team members "Intelligently Follow the Directions of a Superior" (IFDOAS) and I know that a superior can be a book, teacher, Supervisor, situation, etc.

• Team members "Do Our Absolute Best" (DOAB). We know that no one expects less and no one should expect more.

• "Energy x Know-How = Results " (E x KH = R).

Productivity, as defined above, has been clearly explained to me by my supervisor, whose name is signed below. I understand that the Productivity Statement is incorporated on the back of the Team Member Name Badge, which I will soon receive. I also understand that I am to always wear my Team Member Name Badge while at work, and use it as my team member identification. I will refer to the Productivity Statement often, so that I may know it well. I understand what productivity means in an economic sense and I consider myself a productive person.

**EXHIBIT A**

**AMERCO Information Security Agreement**

AMERCO is committed to protecting all private information that is processed or stored in the course of doing business. This information may include our own proprietary Company data, team member data, customer data, or other third-party dealer/affiliate/vendor/partner data. Every team member (all U-Haul Companies, Oxford, Repwest, AMERCO Real Estate Company, etc.) has a responsibility to maintain our customers' and partners' trust through wise and ethical conduct that protects the privacy and security of all private information.

Team members are expected to conduct business with integrity and in compliance with all applicable laws, rules, and regulations, including those specific to data privacy. Failure to do so is potentially harmful to those that have entrusted their information to us and may be damaging to the Company, should a security incident or data breach occur.

All team members are responsible, and can be held accountable, for the privacy of the information they work with and the security of the accounts/systems entrusted to them. This may include, but is not limited to: U-Haul Life, U-Haul Office Anywhere, the Company intranet and applications, HR account credentials, Company-owned computers and mobile devices, private network access, and direct physical access. Relevant information security policies and procedures are available to all team members for review in Publications on uhaul.net and U-Haul Life. Additionally, all team members are provided with informative cyber security and data privacy training courses on U-Haul University, and are required to take them annually.

To safeguard AMERCO proprietary information, assets, and resources, there are certain key guidelines and behaviors that all team members must adhere to. The first and perhaps most important rule is to protect your own user accounts. ALL team members are required to manage their own account credentials and verify their identity and contact information online. Team members must choose strong, complex passwords and keep them secret by following this additional guidance:

- Choose passwords that are <u>unique</u>, <u>long</u> and <u>unpredictable</u>. Consider a pass*phrase* of at least 15 characters, and do not use personal information or common words/patterns to create it.
- Absolutely *NEVER* share your account with anyone else. No one from Tech Support will ever ask you for your password, so be skeptical of anyone asking for it, especially in email or over the phone.
- Do not re-use previous passwords or passwords from other accounts. Change your password immediately if there is any suspicion that it could be compromised.
- If/when using multifactor authentication, protect the second factor, i.e. cell phone or hardware token, against theft or misuse.
- Do not write down your passwords or save them in insecure files for reference. If you have difficulty remembering your password, use a secure password manager application.

Additionally, it is important to abide by the following security guidelines and safe user habits to protect the overall security of AMERCO and our private information.

- Guard against phishing attempts by not opening untrusted emails, clicking on links, or downloading attachments without knowing who the sender is and what the contents are.

1 of 2

**EXHIBIT A**

- Be careful of where you enter your account credentials. Do not enter your username and password into websites without verifying that the URL matches the expected website.
- Always verify vendor credentials and requests for physical access with appropriate Company personnel prior to allowing access/inspections to computer systems (computers, routers, payment terminals, mobile devices, printers, etc.).
- Be aware of your surroundings. Report suspicious activities involving computer systems.
- Do not stay signed into unattended computers and devices at any time. Always lock personal workstations and sign out of shared computers/devices when leaving these systems.
- Do not visit questionable and offensive websites related to adult content, pornography, pirating software, peer-to-peer file sharing, hacking, or other illegal activity.
- Do not install applications/plug-ins unless instructed to do so by Tech Support personnel or with their explicit permission.
- Do not store or send payment information, social security numbers, account numbers, driver's license numbers or any other private information except for necessary business use in Company-approved applications. Do not use email, attachments, instant messages, chat, contract notes, or other electronic communications to store or send this private information.
- Do not keep printed documents with private information unless absolutely necessary, in which case keep them locked up when not in use, and shred them when finished.
- When working with payment cards, only use tokens or the last four digits (instead of full card numbers) for any communications. Never write down or store the 3 or 4-digit security codes.

If you have questions or concerns, please don't hesitate to contact the Data Privacy and Security team at datasecurity@uhaul.com, 602-263-6508, or extension 537100.

---

I agree that I have read and understand the information security policy and procedure awareness material that has been made available to me. I agree to take the available U-Haul University training courses to better understand information security threats and how my actions may affect others and the Company. I acknowledge that I am responsible for securing my own accounts and will do my best to protect them against misuse. I accept the information security policies and guidelines presented herein and will adhere to the ethical and acceptable uses of technology at work.

[Type name]

[Submit button]

**EXHIBIT A**

# Electronic Rules of Communication
**Updated August 2016**

Company-owned computers, electronic messaging systems, telephone system, and any other electronic communication systems ("the electronic communication systems") provided for AMERCO Team members (all U-Haul Companies, Oxford, Repwest, AMERCO Real Estate Company, etc.) are intended to serve as business and communication tools that will enable team members to conduct business in a timely and efficient manner. The electronic communication systems include: First Class Client, the Internet, E-Mail, U-Haul Messenger, Cisco Jabber and voice mail. These electronic communication systems are provided for business purposes only. To ensure that all team members are responsible, productive users of the electronic communication systems, the following policy has been established.

Company computers are provided for Company business use. Unauthorized and unlicensed software are prohibited on Company-owned computers. Any duplication of copyrighted software, except for backup purposes, is a violation of Federal Copyright law and/or Canadian Copyright law and must not occur.

The company has a basic property right to regulate and restrict team members' use of company property. All messages composed, sent, received or stored on the electronic communication systems are the property of the Company. These communications are not the private property of any team member.

Team members are permitted to use their own personal electronic devices for work-related purposes that contribute to the Economy and Effectiveness of the business. Team members agree they shall maintain reasonable security measures for their devices in accordance with best practices and relevant guidance provided by the Company. Use of a personal device for business purposes does not negate the Company's right to review, audit, intercept, access, and disclose any electronic communications created, sent, or received while connected to the Company network.

The use of any personal email account for business purposes is strictly prohibited. Similarly, personal accounts for online/cloud software services including but not limited to online file sharing, backup and synchronization, document collaboration, or instant messaging shall not be used with Company data or for Company communication. Any proposed use of such web services for business purposes will require use of a corporate account provisioned by U-Haul IT.

Team members shall not use Company or personal electronic devices to conduct penetration tests, perform vulnerability scans, or capture and analyze device traffic on the Company network unless these actions are essential to completing their job requirements and the team member has prior authorization by U-Haul IT.

Hourly paid team members are not required to use their personal devices for work-purposes outside of their normal work schedule. This includes reviewing, sending and responding to emails or text messages, responding to phone calls, or making phone calls.

**EXHIBIT A**

The electronic communication systems may not be used to solicit or persuade for commercial ventures, religious or political causes, outside organizations or other non-joba related solicitations.

The electronic communication systems are not to be used to create, make, send or receive any illegal, harassing or offensive communications, including jokes, chain letters and such.

Any use of the Internet to view or download malicious, illegal, offensive, or pornographic material is strictly prohibited.

The electronic communication systems are not to be used to send or distribute copyrighted materials or information proprietary to U-Haul except as necessary in the normal course of business.

Do not assume that electronic communications are private or confidential. It is possible to retrieve and read or listen to messages that have been erased. Telephone calls made to or from Company telephones may be monitored or recorded as part of normal business operations. By using Company telephones, team members are providing their consent to this recording.

The Company reserves the right and exercises the right to review, audit, intercept, access and~disclose~all communications created, sent or received over the electronic communication systems for any business purpose. This includes but is not limited to Internet traffic, emails, and phone calls.

Team members who violate this policy or use the electronic communication systems improperly will be subject to disciplinary action up to and including termination.

Pursuant with the CompanyInformation  Security Agreement, team members are responsible for protecting the privacy and security of their access to these electronic communication systems and Company data. Team members shall use a strong password and never share account usernames, passwords, or personal access rights with anyone else.

The electronic communication systems are not to be used to send any credit card data. When absolutely necessary to send cardholder data only a token or the first six digits and last four digits of the number is acceptable (example: 654321AAAAAABGU1234 or 123456XXXXXX1234).

Adherence to the above policy does not in any way dilute the Company's "at will" status.

**EXHIBIT A**

# PayDay Notice

Your pay days are determined by company policy in conjunction with state law. Monday is the official designated payday for U-Haul Team Members.

Your paycheck will be distributed to you through direct deposit, a pay cash card or mailed direct to your address of record. You will have access to your pay stub through the HR Service Center atwww.uhaulhr.com.You  should be notified as soon as possible by any unforeseen delays in delivery due to technical or other situations beyond Us Haul's control. You will also be notified of any changes to the term stated.

**Mandatory deductions will be taken from your paycheck as determined by Federal or State law. Any further deductions (for medical/health premiums, tool and/or uniform costs, 401(k), etc.) will be deducted as authorized by you.**

**Note: In the event you terminate your employment, final wages will be distributed to you through direct deposit, a pay cash card or mailed to you at the company's discretion to your last known address on file. U-Haul® will comply, however, with any and all state or federal laws regarding final payment of wages.**

NOTE: THE CONTENTS OF THE FORM DO NOT CONSTITUTE THE TERMS OF A CONTRACT OF EMPLOYMENT. NOTHING CONTAINED IN THIS FORM SHOULD BE CONSTRUED AS A GUARANTEE OF CONTINUED EMPLOYMENT BUT, RATHER, EMPLOYMENT WITH U-HAUL® INTERNATIONAL INC., U-HAUL BUSINESS CONSULTANTS INC., OR THE LOCAL COMPANIES IS ON AN "AT WILL" BASIS. THIS MEANS THAT THE EMPLOYMENT RELATIONSHIP MAY BE TERMINATED AT ANY TIME BY EITHER THE EMPLOYEE OR THE EMPLOYER FOR ANY REASON NOT EXPRESSLY PROHIBITED BY LAW. ANY ORAL OR WRITTEN STATEMENTS TO THE CONTRARY ARE INVALID AND SHALL NOT BE RELIED UPON BY ANY PROSPECTIVE, PAST OR PRESENT EMPLOYEE.

**EXHIBIT A**







OLIDAY

1969
41215 N. Ridge Rd.,

ul Reuse 1982

An excuse is a skin of a reason
stuffed with a lie.

— *Billy Sunday* —

**EXHIBIT A**



Common Pleas Court of Cuyahoga County, Ohio

**FILED**

DESIGNATION FORM TO BE USED TO INDICATE THE CLASSIFICATION OF THE CAUSE

Vladimir Alexander L. Swerchowsky        2023 JUL 28  P 3: 04        Judge:  DEBORAH M TURNER

Plaintiff

Vs.                                CLERK OF COURTS                    CV 23 983132

C T CORPORATION SYSTEM/U-HAUL INTERNATIONAL COMPANY/AMERCO/EDWARD JOSEPH SCHOEN/SERENA BARTH/

Defendant  JOHN DOE 1/JOHN DOE 2

---

Has this case been previously filed and dismissed? Yes ☐ No ☑

Case #: _____        Judge: _____

Is this case related to any new cases now pending or previously filed? Yes ☐ No ☑

Case #: _____        Judge: _____

---

**CIVIL CLASSIFICATIONS:** *Place an (X) In ONE Classification Only.*

**Professional Torts:**
☐ 1311 Medical Malpractice
☐ 1315 Dental Malpractice
☐ 1316 Optometric Malpractice
☐ 1317 Chiropractic Malpractice
☐ 1312 Legal Malpractice
☐ 1313 Other Malpractice

**Product Liability:**
☐ 1330 Product Liability

**Other Torts:**
☐ 1310 Motor Vehicle Accident
☐ 1314 Consumer Action
☐ 1350 Misc. Tort

**Workers Compensation:**
☐ 1550 Workers Compensation
☐ 1531 Workers Comp. Asbestos

**Foreclosures:**
☐ Utilize Separate Foreclosure Designation Form

**Commercial Docket:**
☐ 1386 Commercial Docket
☐ 1387 Commercial Docket with Foreclosure

**Administrative Appeals:**
☐ 1540 Employment Services
☐ 1551 Other

**Other Civil:**
☐ 1500 Replevin/Attachment
☐ 1382 Business Contract
☐ 1384 Real Estate Contract
☐ 1388 Consumer Debt
☐ 1390 Cognovit
☐ 1391 Other Contracts
☐ 1490 Foreign Judgment
☐ 1491 Stalking Civil Protection Order
☑ 1501 Misc. Other
☐ 1502 Petition to Contest Adam Walsh Act
☐ 1503 Certificate of Qualification for Employment

---

Amount of Controversy:
☐ None Stated
☐ Less than $25,000
☑ Prayer Amount  100 Billion

Parties have previously attempted one of the
following prior to filing:
☐ Arbitration
☐ Early Neutral Evaluation
☐ Mediation
☑ None

---

*I certify that to the best of my knowledge the within case is not related to any now pending or previously filed, expect as noted above.*

Vladimir Alexander L. Swerchowsky        Pro Se

_____        Attorney of Record (Print or Type)

Address        CONFIDENTIAL        _____
                                    Supreme Court #

Address                              _____
(920) 883-1611                       Email Address

Phone                                Signature

---

**EXHIBIT A**

### THE COURT OF COMMON PLEAS, CIVIL DIVISION
### CUYAHOGA COUNTY, OHIO
Clerk of Courts | The Justice Center | 1200 Ontario Street 1st Floor, Cleveland, Ohio 44113

VLADIMIR ALEXANDER L. SWERCHOWSKY
**Plaintiff**

V.

CT CORPORATION SYSTEM ET AL
**Defendant**

**CASE NO.** CV23983132

**JUDGE** DEBORAH M TURNER

## SUMMONS   SUMC  CM

Notice ID:  51245793



| From:   VLADIMIR ALEXANDER L SWERCHOWSKY      P1 | Atty.:   VLADIMIR ALEXANDER SWERCHOWSKY *CONFIDENTIAL ADDRESS* |
|---|---|

To:    U-HAUL INTERNATIONAL INC.           D2
       2727 N CENTRAL AVE
       PHOENIX AZ 85004-0000

#### NOTICE TO THE DEFENDANT:

The Plaintiff has filed a lawsuit against you in this Court. You are named as a defendant. A copy of the **Complaint** is attached.

If you wish to respond to the Complaint, you must deliver a written **Answer** to the Plaintiff's attorney (or the Plaintiff if not represented by an attorney) at the above address *within 28 days* after receiving this Summons (not counting the day you received it). A letter or a phone call will not protect you. Civil Rule 5 explains the ways that you may deliver the **Answer** (http://www.supremecourt.ohio.gov/LegalResources/Rules/civil/CivilProcedure.pdf)

You must also file a copy of your **Answer** with this Court within 3 days *after* you serve it on the Plaintiff.  You can file your **Answer** with the Clerk of Courts by one of the following methods: 1) In-person or by mail at the above address or 2) electronically through the online e-Filing system. For more information on using the e-Filing system, visit http://coc.cuyahogacounty.us/en-US/efiling.aspx.

If you fail to serve *and* file your **Answer**, you will lose valuable rights. The Court will decide the case in favor of the Plaintiff and grant the relief requested in the **Complaint** by entering a default judgment against you.

You may wish to hire an attorney to represent you. Because this is a civil lawsuit, the Court cannot appoint an attorney for you. If you need help finding a lawyer, contact a local bar association and request assistance.



**Nailah K. Byrd**
**Clerk of Court of Common Pleas**
**216-443-7950**

**Date Sent:** 07/31/2023

By_____
                    **Deputy**

CMSN130

## EXHIBIT A

## THE COURT OF COMMON PLEAS, CIVIL DIVISION
## CUYAHOGA COUNTY, OHIO
Clerk of Courts | The Justice Center | 1200 Ontario Street 1st Floor, Cleveland, Ohio 44113

VLADIMIR ALEXANDER L. SWERCHOWSKY
  **Plaintiff**

**V.**

CT CORPORATION SYSTEM ET AL
  **Defendant**

**CASE NO.** CV23983132

**JUDGE** DEBORAH M TURNER

# SUMMONS  SUMC  CM

Notice ID: 51245794



| From: | VLADIMIR ALEXANDER L SWERCHOWSKY    P1 |
| --- | --- |

| Atty.: | VLADIMIR ALEXANDER SWERCHOWSKY |
| --- | --- |
| | *CONFIDENTIAL ADDRESS* |

| To: | AMERCO    D3 |
| --- | --- |
| | 41215 N RIDGE RD |
| | ELYRIA OH 44035-0000 |

#### NOTICE TO THE DEFENDANT:

The Plaintiff has filed a lawsuit against you in this Court. You are named as a defendant. A copy of the **Complaint** is attached.

If you wish to respond to the Complaint, you must deliver a written **Answer** to the Plaintiff's attorney (or the Plaintiff if not represented by an attorney) at the above address *within 28 days* after receiving this Summons (not counting the day you received it). A letter or a phone call will not protect you. Civil Rule 5 explains the ways that you may deliver the **Answer** (http://www.supremecourt.ohio.gov/LegalResources/Rules/civil/CivilProcedure.pdf)

You must also file a copy of your **Answer** with this Court within 3 days *after* you serve it on the Plaintiff.  You can file your **Answer** with the Clerk of Courts by one of the following methods: 1) In-person or by mail at the above address or 2) electronically through the online e-Filing system. For more information on using the e-Filing system, visit http://coc.cuyahogacounty.us/en-US/efiling.aspx.

If you fail to serve *and* file your **Answer**, you will lose valuable rights. The Court will decide the case in favor of the Plaintiff and grant the relief requested in the **Complaint** by entering a default judgment against you.

You may wish to hire an attorney to represent you. Because this is a civil lawsuit, the Court cannot appoint an attorney for you. If you need help finding a lawyer, contact a local bar association and request assistance.



**Nailah K. Byrd**
**Clerk of Court of Common Pleas**
**216-443-7950**

**Date Sent:** 07/31/2023

By_____
                              **Deputy**

CMSN130

# EXHIBIT A

## THE COURT OF COMMON PLEAS, CIVIL DIVISION
## CUYAHOGA COUNTY, OHIO

Clerk of Courts | The Justice Center | 1200 Ontario Street 1st Floor, Cleveland, Ohio 44113

<u>VLADIMIR ALEXANDER L. SWERCHOWSKY</u>
**Plaintiff**

**V.**

<u>CT CORPORATION SYSTEM ET AL</u>
**Defendant**

**CASE NO.** CV23983132

**JUDGE** DEBORAH M TURNER

# SUMMONS  SUMC  CM

**Notice ID:** 51245795



| From:  VLADIMIR ALEXANDER L SWERCHOWSKY      P1 | Atty.:  VLADIMIR ALEXANDER SWERCHOWSKY *CONFIDENTIAL ADDRESS* |
|---|---|

| To:  SERENA BARTH                                      D4 |
|---|
| 41215 N RIDGE RD |
| ELYRIA OH 44035-0000 |

### NOTICE TO THE DEFENDANT:

The Plaintiff has filed a lawsuit against you in this Court. You are named as a defendant. A copy of the **Complaint** is attached.

If you wish to respond to the Complaint, you must deliver a written **Answer** to the Plaintiff's attorney (or the Plaintiff if not represented by an attorney) at the above address *within 28 days* after receiving this Summons (not counting the day you received it). A letter or a phone call will not protect you. Civil Rule 5 explains the ways that you may deliver the **Answer** (http://www.supremecourt.ohio.gov/LegalResources/Rules/civil/CivilProcedure.pdf)

You must also file a copy of your **Answer** with this Court within 3 days *after* you serve it on the Plaintiff.  You can file your **Answer** with the Clerk of Courts by one of the following methods: 1) In-person or by mail at the above address or 2) electronically through the online e-Filing system. For more information on using the e-Filing system, visit http://coc.cuyahogacounty.us/en-US/efiling.aspx.

If you fail to serve *and* file your **Answer**, you will lose valuable rights. The Court will decide the case in favor of the Plaintiff and grant the relief requested in the **Complaint** by entering a default judgment against you.

You may wish to hire an attorney to represent you. Because this is a civil lawsuit, the Court cannot appoint an attorney for you. If you need help finding a lawyer, contact a local bar association and request assistance.



**Nailah K. Byrd**
**Clerk of Court of Common Pleas**
**216-443-7950**

**Date Sent:** <u>07/31/2023</u>

By_____
**Deputy**

CMSN130

# EXHIBIT A

## THE COURT OF COMMON PLEAS, CIVIL DIVISION
## CUYAHOGA COUNTY, OHIO

Clerk of Courts | The Justice Center | 1200 Ontario Street 1st Floor, Cleveland, Ohio 44113

<u>VLADIMIR ALEXANDER L. SWERCHOWSKY</u>
 **Plaintiff**

V.

<u>CT CORPORATION SYSTEM ET AL</u>
 **Defendant**

**CASE NO.** CV23983132

**JUDGE** DEBORAH M TURNER

# SUMMONS  SUMC  CM

**Notice ID:** 51245796



| From: VLADIMIR ALEXANDER L SWERCHOWSKY     P1 | Atty.: VLADIMIR ALEXANDER SWERCHOWSKY<br>*CONFIDENTIAL ADDRESS* |
|---|---|

| To: EDWARD JOSEPH SCHOEN                D5<br>2727 N CENTRAL AVE<br>PHOENIX AZ 85004-0000 |
|---|

### NOTICE TO THE DEFENDANT:

The Plaintiff has filed a lawsuit against you in this Court. You are named as a defendant. A copy of the **Complaint** is attached.

If you wish to respond to the Complaint, you must deliver a written **Answer** to the Plaintiff's attorney (or the Plaintiff if not represented by an attorney) at the above address *within 28 days* after receiving this Summons (not counting the day you received it). A letter or a phone call will not protect you. Civil Rule 5 explains the ways that you may deliver the **Answer** (http://www.supremecourt.ohio.gov/LegalResources/Rules/civil/CivilProcedure.pdf)

You must also file a copy of your **Answer** with this Court within 3 days *after* you serve it on the Plaintiff.  You can file your **Answer** with the Clerk of Courts by one of the following methods: 1) In-person or by mail at the above address or 2) electronically through the online e-Filing system. For more information on using the e-Filing system, visit http://coc.cuyahogacounty.us/en-US/efiling.aspx.

If you fail to serve *and* file your **Answer**, you will lose valuable rights. The Court will decide the case in favor of the Plaintiff and grant the relief requested in the **Complaint** by entering a default judgment against you.

You may wish to hire an attorney to represent you. Because this is a civil lawsuit, the Court cannot appoint an attorney for you. If you need help finding a lawyer, contact a local bar association and request assistance.



**Nailah K. Byrd**
**Clerk of Court of Common Pleas**
**216-443-7950**

**Date Sent:** <u>07/31/2023</u>

By_____
                         **Deputy**

CMSN130

# EXHIBIT A